E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Carla Badirian | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):           Attorneys Present for Defendant(s):

Not Present                                                Not Present

**Proceedings:**     (In Chambers) Order GRANTING Defendant's Motion for Summary Judgment

Before the Court is Defendant's motion for summary judgment. Dkt. # 25. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the arguments presented in the moving, opposing, and reply papers, the Court GRANTS Defendant's motion for summary judgment.

I.   Introduction

This action arises out of an employment dispute between Plaintiff Robert Klein ("Plaintiff") and Defendant Walt Disney Company ("Defendant" or "Walt Disney"). *See* Dkt. # 1. In short, Plaintiff claims that Walt Disney unlawfully retaliated against him by terminating his employment after he reported allegations of sexual harassment involving two other employees. *Id.* Plaintiff's Complaint raises two causes of action against Walt Disney: (1) unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"); and (2) unlawful retaliation under the California Fair Employment & Housing Act ("FEHA"), Cal. Gov. Code § 12940(h). *Id.* Walt Disney now moves for summary judgment on both of Plaintiff's claims. Dkt. # 25.

II.  Background

   A.   Plaintiff's Employment at Walt Disney

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

In 2007, Walt Disney hired Plaintiff to work in its Archives Department. *See Defendant's Statement of Uncontroverted Facts* ("*DSUF*") ## 1-2. Plaintiff worked under Rebecca Cline ("Ms. Cline"), Director of the Archives Department, and Joanna Pratt ("Ms. Pratt"), Manager of Operations for the Archives Department. *Id.* ## 4-5.

Walt Disney promoted Plaintiff to Manager of Collections for the Archives Department in 2010. *Id.* # 6. As Manager of Collections, Plaintiff supervised a number of employees, including archivist Rick Lorentz ("Mr. Lorentz"), archivist Michael Buckoff ("Mr. Buckoff"), and photo library supervisor Andrea Carbone ("Ms. Carbone"), who had worked in the Archives Photo Library for over a decade. *Id.*

According to Plaintiff, Ms. Carbone was known as a "black widow" in the Archives Department in light of her inappropriate behavior with male employees. *See Plaintiff's Statement of Uncontroverted Facts* ("*PSUF*") ## 143, 146. Plaintiff also avers that Walt Disney's Human Resources Department ("Human Resources") was well aware of Ms. Carbone's inappropriate conduct, but did not take action to correct it. *See id.* ## 136, 149, 152-53, 178-79. Plaintiff even goes so far as to say that he was concerned about reporting Ms. Carbone's conduct to Human Resources due to Walt Disney's history of "covering up issues" like sexual harassment and its corporate "culture [of] not report[ing] sexual harassment for fear of retaliation." *Id.* ## 175-77.

      B.     <u>Kiara Gellar's Engagement at Walt Disney</u>

Following Plaintiff's promotion to Manager of Collections, the Archives Department required assistance with its "Dream Files" project. *See DSUF* # 23. In order to "help get the [Dream Files] project back up to speed," Plaintiff recommended Kiara Gellar ("Mr. Gellar") to Ms. Cline and Ms. Pratt, who were in charge of hiring. *Id.* # 24; *see also Plaintiff's Response to Defendant's Statement of Undisputed Facts* ("*PRUF*") # 24. Although Ms. Cline and Ms. Pratt did not know Mr. Gellar at that time, Plaintiff informed them that Mr. Gellar was a mutual friend of his and Ms. Carbone, and that Mr. Gellar was the "perfect person" for the job given his impressive command of Walt Disney history. *See DSUF* # 24; *PRUF* # 24; *see also PSUF* ## 248-49. Plaintiff also avers that he did not know the scope of Ms. Carbone and Mr. Gellar's relationship when he recommended Mr. Gellar for the position at Walt Disney, including whether the two were romantically or platonically involved at the time. *See PRUF* # 14.

Defendant, however, disputes Plaintiff's purported lack of knowledge of Mr. Gellar and Ms. Carbone's admittedly romantic relationship considering that, among other things, Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

and his wife vacationed with Mr. Gellar and Ms. Carbone in Graceland months before Plaintiff recommended Mr. Gellar for the position.  *See DSUF ##* 15, 25-26.  Furthermore, during the vacation in Graceland, Plaintiff, his wife, Mr. Gellar, and Ms. Carbone stayed in a two-bedroom condominium, and Plaintiff "assumed" that Mr. Gellar and Ms. Carbone shared the other bedroom.  *Id.* # 17 [*Klein Depo.* 43:14-16].

In any case, based on Plaintiff's recommendation and eventual approval from Human Resources, Walt Disney engaged Mr. Gellar as an independent contractor to work in the photo library of the Archives Department, with Ms. Carbone as his immediate supervisor, and Plaintiff and Ms. Cline as his reporting supervisors.  *See DSUF* # 29.  Despite Plaintiff's involvement in the pre-hiring process of Mr. Gellar, Plaintiff did not prepare Mr. Gellar's hiring paperwork, as that task was left up to Ms. Pratt, the Manager of Operations for the Archives Department.  *See PSUF* ## 294-97, 299-300.

Soon after Mr. Gellar's hiring, Ms. Carbone suggested to various employees in the Archives Department that Mr. Gellar was her "boyfriend."  *See DSUF* # 31; *PSUF* # 327.

C.    The Report by Plaintiff to Human Resources

Conflicts soon arose between Ms. Carbone and Mr. Gellar.  *Id.* # 349.  As Plaintiffs tells it, Ms. Carbone called him crying about something to do with Mr. Gellar, but would not explain exactly why she was crying or what had specifically occurred between her and Mr. Gellar.  *Id.* # 350.  Mr. Gellar also contacted Plaintiff in order to explain that he was having a hard time working with Ms. Carbone, and that Ms. Carbone had threatened to fire him from the Archives Department.  *See DSUF* # 35.  In response to these calls, Plaintiff emailed Human Resources with the following message:  "My issue is nothing urgent, though I wanted to confer with HR to get some advice on a recent employee situation.  Unless I am directed otherwise, I can wait to discuss this with HR when I return from Anaheim later this month . . . it is nothing pressing[.]"  *Id.* # 36.  Plaintiff ultimately believed that the situation was just "another day of [Ms. Carbone] drama" and would soon blow over without further issue.  *See PSUF* # 357.

The situation did not blow over.  At the D23 Exposition, two weeks after their initial confrontation, Ms. Carbone and Mr. Gellar called Plaintiff again, each complaining about the other.  *See DSUF* # 41.  And again, Plaintiff avers that neither Ms. Carbone nor Mr. Gellar told him the details, but that Ms. Carbone insinuated that Mr. Gellar had repeatedly disobeyed her directions at the D23 Exposition.  *See PSUF* # 370.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

After the D23 Exposition, Plaintiff spoke to Mr. Gellar and learned more. *Id.* ## 374-86. According to Mr. Gellar, Ms. Carbone told him that unless he stayed in her hotel room and committed to a relationship with her, she would do everything possible to terminate his contract with Walt Disney. *Id.* ## 378-89. In light of these facts, Plaintiff believed that Ms. Carbone may have been blackmailing and sexually harassing Mr. Gellar. *Id.* ## 379-80. Thus, Plaintiff and Ms. Pratt discussed the matter and reported what they knew to Human Resources. *Id.* # 389. Plaintiff states that he did so despite his concern that reporting sexual harassment could lead to significant issues for Walt Disney because of its prior reluctance to address Ms. Carbone's similar conduct. *Id.* ## 400-401.

Human Resources responded to Plaintiff and Ms. Pratt by stating, among other things, that "we are going to need to look into this as soon as possible." *Id.* # 391.

D. <u>The Investigation by Shana Bawek</u>

Days later, Human Resources appointed Shana Bawek ("Ms. Bawek") to lead an investigation into Plaintiff's allegations of Ms. Carbone's sexual harassment of Mr. Gellar. *See DSUF* ## 50-51. Ms. Bawek began her investigation by asking Plaintiff to discuss his knowledge of Ms. Carbone and Mr. Gellar's relationship history. *Id.* # 59. Plaintiff told Ms. Bawek about their trip to Graceland, but explained that he did not think Ms. Carbone and Mr. Gellar were romantically involved. *Id.* In response to Ms. Bawek's question regarding the sleeping arrangements during the trip, Plaintiff said that he did not know whether Ms. Carbone and Mr. Gellar slept in the same room. *Id.* # 60.

Ms. Bawek also interviewed Ms. Carbone and other employees working in the Archives Department. *See PSUF* ## 63-70. According to Ms. Bawek's interview notes, Ms. Carbone stated, *inter alia*, that she had been intimately involved with Mr. Gellar for two and a half years and that Plaintiff knew of the relationship before Mr. Gellar was hired to work in the Archives Department. *See DSUF* # 64 [citing *Carbone Decl.* ¶ 4]. She also claimed that she had informed Plaintiff that it would not be a good idea for her to supervise Mr. Gellar; yet Plaintiff hired Mr. Gellar despite this warning. *Id.*[1]

As part of the investigation process, Mr. Lorentz similarly stated that prior to Mr. Gellar's hiring at Walt Disney, he informed Plaintiff that Ms. Carbone and Mr. Geller had a "chaotic"

---

[1] Plaintiff does not dispute that Ms. Carbone made these statements; however, he does question the veracity of the statements and Ms. Carbone's credibility. *See PRUF* # 65.

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

relationship and it was "not a good idea" to hire Mr. Gellar. *See DSUF* # 77. Mr. Lorentz did not, however, specify the scope of Ms. Carbone and Mr. Gellar's relationship to the extent of admitting whether they were romantically or platonically involved. *See PRUF* # 77. In the same vein, Mr. Buckoff informed Ms. Bawek that he knew that Ms. Carbone and Mr. Gellar were in an intimate relationship prior to Mr. Gellar's hiring, and that Plaintiff had told him at the time of Mr. Gellar's hiring not to tell anyone in the Archives Department about their trip to Graceland. *See DSUF* ## 79-80.

In addition to these interviews, Ms. Bawek reviewed paperwork regarding Mr. Gellar's hiring. *See PSUF* # 513. The paperwork indicated that Ms. Pratt, rather than Plaintiff, had prepared the hiring paperwork, and that the paperwork was "incomplete" due to Mr. Gellar's failure to sign a confidentiality statement. *Id.* ## 521, 544-45. Ms. Bawek then drafted a report including these findings among others. *See DSUF* # 100.

Although Ms. Bawek's report did not include findings of a hostile environment of sexual harassment, her report did conclude that Ms. Carbone engaged in *quid pro quo* sexual harassment by threatening Mr. Gellar's employment when he refused to stay in her hotel room during the D23 Exposition. *Id.* # 97. Ms. Bawek's report also detailed various professional errors committed by Plaintiff, such as his failure to disclose his true knowledge of Ms. Carbone and Mr. Gellar's relationship during the hiring of Mr. Gellar and throughout the investigation of his sexual harassment allegations. *Id.* # 98. Plaintiff, however, disputes many of the findings included in Ms. Bawek's report. Namely, Plaintiff contends that Ms. Pratt prepared Mr. Gellar's hiring paperwork, and that Ms. Bawek therefore erred in concluding that Plaintiff was responsible for the incompleteness of the paperwork. *See PRUF* # 98; *see also PSUF* ## 524-25, 529-30.

Ms. Bawek then sent the report to her supervisor in Human Resources, David Gunn ("Mr. Gunn"), who forwarded the report to Gary Randall ("Mr. Randall"), Senior Vice President of Human Resources. *See DSUF* # 101. Mr. Gunn informed Mr. Randall that termination discussions were already planned for Plaintiff and Ms. Carbone, and asked Mr. Randall for the "green light" to conduct those discussions. *See PSUF* # 445.

E.   Plaintiff's Termination from Walt Disney

In view of the findings in Ms. Bawek's report, Mr. Randall gave the "green light" to terminate Ms. Carbone due to her *quid pro quo* sexual harassment of Mr. Gellar. *See DSUF* # 103. Mr. Randall also consented to Plaintiff's termination because of his lack of judgment in

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

engaging Mr. Gellar to work under Ms. Carbone in the Archives Department, and his dishonesty as to his knowledge of Mr. Gellar and Ms. Carbone's relationship at the time of Mr. Gellar's hiring and throughout the investigation process.  *See DSUF* ## 103-104.  Mr. Randall specifically believed that Mr. Lorentz's statements put Plaintiff on inquiry notice of the fact that Mr. Gellar and Ms. Carbone were engaged in a romantic relationship at the time of Mr. Gellar's hiring.  *Id.* ## 104-105.

In contrast to Ms. Bawek's findings and Mr. Randall's conclusion from those findings, Plaintiff offers a different rendition of the facts.  Instead of accepting that Walt Disney terminated him for the aforementioned reasons, Plaintiff contends that Walt Disney terminated him in retaliation for reporting Mr. Gellar's allegations of sexual harassment.  *See PRUF* # 104.  Plaintiff supports this alternative conclusion based on a number of facts, including Ms. Bawek's inaccurate finding that he prepared Mr. Gellar's hiring paperwork despite her knowledge that Ms. Pratt did so.  *See PSUF* ## 618-19, 625.  Plaintiff also notes that Mr. Randall admitted during his deposition that Plaintiff did not prepare Mr. Gellar's hiring paperwork.  *See id.* ## 682-83.

F.  Purported Post-Employment Retaliation

Since his termination, Plaintiff avers that Walt Disney placed him on a no re-hire list, withdrew a signed book contract with him, and refused to give him a reference letter.  *Id.* ## 658-60, 672.  Plaintiff further claims that he been unable to secure a job and has ultimately been "blackballed" in the entertainment industry.  *Id.* ## 670-74.

G.  Plaintiff Files this Action Against Walt Disney

On February 23, 2013, Plaintiff filed a Complaint against Walt Disney, alleging that Walt Disney unlawfully terminated and consequently retaliated against him for reporting Mr. Gellar's allegations of sexual harassment.  *See* Dkt. # 1.  Plaintiff brings claims for unlawful discrimination under the anti-retaliation provisions of Title VII and FEHA.  *Id.*  Although there has been no motion practice to date, Walt Disney ("Defendant") now moves for summary judgment on Plaintiff's Title VII and FEHA claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Dkt. # 25.

III.  Legal Standard

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT JS - 6
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden to demonstrate the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the nonmovant must set forth specific evidence showing that there remains a genuine issue for trial, and "may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The showing each party must make at the summary judgment stage depends on which party bears the burden of proof at trial on a particular issue. *See Celotex*, 477 U.S. at 325; *In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990). The moving party always bears the initial burden of informing the court of the basis for its motion and identifying the evidence on the record that it believes shows an absence of a genuine issue of fact. *Celotex*, 477 U.S. at 323. However, "if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden." *Brazier*, 921 F.2d at 223. When the nonmoving party has the burden at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the moving party points to an absence of evidence on an issue for which the nonmoving party bears the burden at trial, the nonmoving party must then respond with evidence to support all essential elements. Thus, to survive a motion for summary judgment, "[t]he nonmoving party must [] make a sufficient showing to establish the existence of all elements essential to their case on which they will bear the burden of proof at trial." *Brazier*, 921 F.2d at 223 (citing *Celotex*, 477 U.S. at 322-23). If the nonmoving party fails to make such a showing, summary judgment must be granted. *Celotex*, 477 U.S. at 325. In short, a moving party may prevail on a motion for summary judgment on an issue on which the nonmoving party bears the burden by establishing that the nonmoving party does not have evidence to support its claim. *Id.*

An issue of fact is a genuine and material issue if it cannot be reasonably resolved in favor of either party and may affect the outcome of the suit. *See Anderson*, 477 U.S. at 249-50. A party asserting that a fact cannot be genuinely disputed must support that assertion by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party may object that material cited would not be admissible in

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

evidence. *See id.* 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show that the declarant or affiant is competent to testify on the matters stated. *See id.* 56(c)(4).

IV. Discussion

Plaintiff's first and second causes of action assert that Defendant unlawfully retaliated against him in violation of Title VII and FEHA. *See Compl.* ¶¶ 67-82.[2] Title VII prohibits an employer from retaliating against an employee for reporting or opposing an unlawful employment practice. *See Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). Similarly, FEHA's anti-retaliation provision makes it unlawful for an employer to "discriminate against any person because the person has opposed any practices forbidden under this [Act] or because the person has filed a complaint, testified, or assisted in any proceeding under this [Act]." Cal. Gov. Code § 12940; *see also Sada v. Robert F. Kennedy Medical Center*, 56 Cal. App. 4th 138, 157 (1997).

Because of the similarity of Title VII's and FEHA's anti-retaliation provisions, California courts generally look to federal precedent when analyzing unlawful retaliation claims under FEHA. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000); *see also Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 475-76 (1992) (stating that FEHA retaliation claims "are evaluated under federal law interpreting Title VII cases"). Therefore, whether a claim arises under Title VII or FEHA, federal and state courts alike evaluate unlawful retaliation claims pursuant to the same burden-shifting framework articulated by the United States Supreme Court in the hallmark case *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196-197 (9th Cir. 2003); *see also Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (applying the same burden-shifting framework for an unlawful retaliation claim under Title VII to an unlawful retaliation claim under FEHA).

Under this framework, a plaintiff must make out a prima facie case of employment discrimination by the employer. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2003). To establish a prima facie case for unlawful employment retaliation specifically, a

---

[2] Plaintiff's Complaint also seems to incorporate a claim for post-employment retaliation. *See Compl.* ¶ 70. To the extent it does so, his arguments track his general retaliation claims under Title VII and FEHA. *See Opp.* 23:13-27. The Court thus analyzes these claims as one and the same for purposes of Defendant's summary judgment motion.

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

plaintiff must provide enough evidence to show (1) his or her involvement in protected opposition activity to an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action.[3] *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Yanowitz v. L'Oreal USA Inc.*, 36 Cal. 4th 1028, 1042 (2005). At summary judgment, the degree of proof necessary to establish a prima facie case of retaliation "does not even rise to the level of a preponderance of the evidence." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

Establishing a prima facie case of retaliation creates a rebuttable presumption that the employer unlawfully retaliated against the plaintiff. *Id.* As a result, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

The plaintiff must then produce evidence to raise a genuine issue of material fact as to whether the employer's nondiscriminatory reason is merely a pretext for its alleged discriminatory action. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). The plaintiff may show pretext by directly showing that unlawful discrimination likely motivated the employer, or by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not credible. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Put simply, the plaintiff must produce some admissible evidence suggesting that the employer retaliated against him or her because of a discriminatory intent or animus. *Id.*

Defendant attacks Plaintiff's Title VII and FEHA claims at each step of the *McDonnell Douglas* burden-shifting framework. *See Mot.* 8:15-16:15. At the first step, Defendant avers that Plaintiff cannot make out a prima facie showing of unlawful retaliation because he cannot show that he participated in an investigation regarding an unlawful employment practice or that

---

[3] Compared to FEHA, Title VII defines the term "adverse action" slightly more broadly. While FEHA requires that the act "must materially affect the terms, conditions, or privileges of employment to be actionable," *Yanowitz*, 36 Cal. 4th at 1052, Title VII allows a retaliation claim to be premised on an act that a reasonable person would find to be materially adverse, *i.e.*, an act that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

he opposed an unlawful employment practice. *Id.* 8:15-13:9. At the second step, Defendant asserts that, even assuming Plaintiff could make out a prima facie case, it had a legitimate, nondiscriminatory reason for terminating him. *Id.* 13:12-14:8. At the third and final step, Defendant contends that there is not a scintilla of evidence of any pretext in its decision to terminate Plaintiff. *Id.* 14:10-16:15. Defendant accordingly concludes that Plaintiff's Title VII and FEHA claims fail as a matter of law, along with his additional request for punitive damages. *Id.* 16:17-17:15.

As explained more fully below, the Court agrees with Defendant's conclusion that Plaintiff's Title VII and FEHA claims fail at step-one of the *McDonnell Douglas* framework. The Court therefore finds no need to proceed to the second and third steps of that test. Nor does the Court consider Plaintiff's request for punitive damages, as that request rises and falls with the demerits of Plaintiff's Title VII and FEHA claims.

    A.    <u>Plaintiff Fails to Establish a Prima Facie Case of Retaliation</u>

Plaintiff must make three showings in order to establish a prima facie case of unlawful employment retaliation. *See, e.g.*, *Uche-Uwakwe v. Shinseki*, No. EDCV 12-01562 VAP (OPx), 2013 U.S. Dist. LEXIS 133658, at *50 (C.D. Cal. 2013). Plaintiff must initially show that he engaged in protected activity under Title VII and FEHA. *Id.* Plaintiff must also show that Defendant subjected him to an adverse employment action. *Id.* And Plaintiff must finally show that a causal link exists between his protected activity and Defendant's adverse employment action. *Id.* While Plaintiff readily satisfies the first and second elements of his prima facie case, his case fails at the third and final step, as he fails to create a dispute of fact on the issue of causation.

        *i.*    *Plaintiff Engaged in Protected Activity*

To prevail on his retaliation claims under Title VII and FEHA, Plaintiff must prove that Defendant terminated his employment "because he [ ] opposed any practice made an unlawful employment practice by [Title VII or FEHA], or because he [ ] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII or FEHA]." 42 U.S.C. § 2000e-3(a); *accord* Cal. Gov. Code § 12940(h). In other words, in order for Plaintiff to satisfy the first element of his prima facie case for unlawful retaliation, Plaintiff must show that he opposed an unlawful employment practice or participated in an employment proceeding regarding an unlawful employment practice. *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988); *see also Luckey v. Visalia Unified Sch. Dist.*, No. 1:13-CV-332

E-FILED 6-6-14 [25]
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

AWI SAB, 2013 U.S. Dist. LEXIS 127027, at *3-5 (E.D. Cal. Sept. 4, 2013) (outlining differences between the "opposition clause" and "participation clause" of Title VII).

 Defendant argues that Plaintiff has neither shown participation in an employment proceeding regarding an unlawful employment practice, nor opposition to an unlawful employment practice. *See Mot.* 8:17-19. The Court, however, begs to differ. While Plaintiff has not shown participation in an unlawful employment proceeding, he has shown opposition to an unlawful employment practice under Title VII and FEHA.

 An employee opposes an unlawful employment practice when he or she opposes discrimination based on certain protected classifications, such as sex, race, color, religion, and national origin, even when the employee is not aware that the practice is unlawful. *See Learned*, 860 F.2d at 932 ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation."); *see also Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2002) ("Title VII allows employees to freely report actions that they reasonably believe are discriminatory, even if those actions are in fact lawful."). An employee adequately demonstrates opposition to an unlawful employment practice by either filing a complaint, testifying about an employer's unlawful practices, or "engaging in any other activity intended to oppose an employer's discriminatory practices." *Raad*, 323 F.3d at 1197.

 The parties in this case seem to agree that if Plaintiff had reported to Human Resources that *he* was the subject of unlawful sexual harassment, then Plaintiff could easily show "opposition" to an unlawful employment practice—and for good reason, as volumes upon volumes of federal and state case law support such a conclusion. *See, e.g.*, *White v. Hansen*, No. C 05-784 SBA, 2005 U.S. Dist. LEXIS 43989, at *21 (N.D. Cal. July 27, 2005) (holding that plaintiff satisfied Title VII's opposition clause by reporting sexual remarks made by another employee to human resources). But that's not exactly what happened here. Plaintiff did not file a complaint regarding Defendant's alleged unlawful practices on his own behalf—he did so on behalf of another employee, by reporting Mr. Gellar's allegations of sexual harassment to Human Resources. *See PSUF* ## 389-95, 403; *see also PRUF* # 49. Although Defendant avers that such a twist of fact cannot lead to a finding that Plaintiff engaged in protected opposition activity under Title VII or FEHA, the text and purpose of these statutes convince the Court otherwise.

 First and foremost, because the term "opposition" is not defined in Title VII, it must be understood according to its plain meaning. *See Crawford v. Metro. Gov't*, 555 U.S. 271, 276 (2009). The Supreme Court therefore defines protected "opposition" activity under Title VII to

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

include an employee's attempt "to resist or antagonize" an unlawful employment practice, in addition to an employee's attempt "to confront" an unlawful employment practice. *Id.* (citing Webster's New International Dictionary 1710 (2d ed. 1957)). In the instant case, and despite Defendant's objections on reply, Plaintiff's evidence shows that he was concerned by Mr. Gellar's allegations of sexual harassment and that Plaintiff took it upon himself to contact Human Resources in order to report such allegations. *See* PSUF ## 175, 389-95, 403. The Court therefore finds that Plaintiff "confronted" and consequently "opposed" an unlawful employment practice under Title VII and FEHA, even though he did so by reporting Mr. Gellar's allegations of sexual harassment rather than his own allegations of the same. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) (finding that plaintiff opposed an unlawful employment practice under Title VII even though he did so on behalf of others); *see also Crawford*, 555 U.S. at 276 ("When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.").

Defendant attempts to dispute this conclusion by arguing that Plaintiff's opposition activity should not receive protection because he reported Mr. Gellar's allegations as part of his managerial duties; however, this argument lacks merit too. *See* Mot. 8:21-10:8. For a second time, Defendant's argument belies the text of Title VII. The only caveat placed upon the protection of an employee from retaliation under Title VII concerns the "reasonableness" of the employee's opposition conduct. *See* 42 U.S.C. § 2000(e)-3(a). The statute does not therefore limit protection based on who the individual doing the complaining might be, or to whom the complaint is made known. If anything, Section 2000(e)-3(a) of Title VII makes clear that its protections apply to not just some employees, but to "any employee" who opposes discrimination, including managers and subordinates alike. *Id.*; *see Johnson*, 215 F.3d at 579 ("[T]here is no qualification on who the individual doing the complaining may be . . . the complaint may be made by anyone[.]") (citing EEOC Compliance Manual (CCH) P 8006); *see also Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 868 (2011) ("Title VII's antiretaliation provision prohibits any employer action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

To the extent Defendant further relies on *McKenzie v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996), a case out of the Tenth Circuit holding that the Fair Labor Standards Act does not protect an employee when the employee "merely performs her everyday duties as personnel director for the company," the Court again remains steadfast in its conclusion. *Id.* at 1486. Unlike *McKenzie* and the other out-of-district cases that Defendant cursorily cites, *see* Mot. 9:3-10:8, Plaintiff does not bring his claims under the Fair Labor Standards Act. He does so under

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

Title VII and FEHA, *see Compl.* ¶¶ 67-82, two entirely different statutes containing extremely broad anti-retaliation provisions.

"The purpose of Title VII's anti-retaliation provision is to bar employers from taking actions which could have 'a deleterious effect on the exercise of these rights by others.'" *Passantino*, 212 F.3d at 506 (citing *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986)). Similarly, FEHA's anti-retaliation provision "serves the salutary purpose of encouraging open communication between employees and employers so that employers can take voluntary steps to remedy FEHA violations, a result that will be achieved only if employees feel free to make complaints without fear of retaliation." *Miller v. Dept. of Corr.*, 36 Cal. 4th 446, 475 (2005). By reading any form of a managerial exception into Title VII or FEHA, as Defendant invites this Court to do, open communication between employees and employers would surely chill and may even completely freeze over. Thus, not just the text, but the purposes behind Title VII and FEHA as well, command the Court to reject Defendant's request to read a managerial exception into either statute. The Court therefore proceeds to the second step of the *McDonnell Douglas* framework, as Plaintiff satisfies the first element by engaging in protected opposition activity under Title VII and FEHA, regardless of whether he acted within the scope of his duties in reporting Mr. Gellar's allegations of sexual harassment to Human Resources.

      *ii.     Plaintiff Suffered an Adverse Employment Action*

Pursuant to the second element of his prima facie case, Plaintiff must establish that he suffered an "adverse employment action." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). An adverse employment decision includes actions that materially affect compensation, terms, conditions, or privileges of an employee's employment. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

The parties do not dispute that Plaintiff suffered an adverse employment action when Defendant terminated his employment, and, in light of a long-line of authority reaching that same conclusion, there should not be any disagreement. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008); *Guz*, 24 Cal. 4th at 355; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000) ("Among those employment decisions that can constitute adverse employment are termination[.]"). Hence, Plaintiff satisfies the second element of his prima facie case for retaliation under Title VII and FEHA as well.

      *iii.    Plaintiff Fails to Establish Causation*

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

  With the first and second elements of Plaintiff's prima facie case well established, the Court turns to the third and final element—causation. Until a few years ago, a plaintiff could establish causation in the context of a Title VII retaliation claim by showing that engaging in a protected activity was merely a "motivating factor" in the employer's adverse employment action. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). The United States Supreme Court's decision in *Nassar*, however, recently heightened that requirement. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013). Under *Nassar*, unlawful employment retaliation claims "must be proved according to the traditional principles of but-for causation." *Id.* at 2533; *see also Campbell v. Hagel*, 536 F. App'x 733 (9th Cir. 2013); *Guz*, 24 Cal. 4th at 354. The but-for causation standard requires a plaintiff to demonstrate that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 133 S. Ct. at 2533.

  Furthermore, while a plaintiff may create an inference of causation based on timing or a pattern of adverse conduct, such an inference arises only when the evidence shows that "the employer was aware that the plaintiff had engaged in the protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). In *Cohen*, for example, the Ninth Circuit held in a Title VII retaliation case that there was no causation because the evidence established that the supervisor who made the decision to demote the plaintiff was simply unaware that the plaintiff had filed an EEOC complaint and there was "no evidence that any company official or employee who had knowledge of the plaintiff's complaint had any part in the policy decision" to terminate the plaintiff. *Id.*

  But on the flip-side of *Cohen*, the Court also recognizes that when multiple individuals participate in an adverse employment action, the plaintiff need not demonstrate that every individual who participated in the action shared discriminatory animus toward the plaintiff. As the *DeJung* court declared, "an individual employment decision should not be treated as a watertight compartment, with discriminatory statements in the course of one decision somehow sealed off from every other decision." *DeJung v. Super. Ct.*, 169 Cal. App. 4th 533, 551 (2008). Or, in the words of the Ninth Circuit, a plaintiff may establish "upstream causation" in an unlawful retaliation case by showing "evidence of discriminatory animus exhibited by a individual who influenced or participated in the [adverse employment] decision making process," even absent evidence that the final decision-maker harbored such animus. *Dominguez-Curry*, 424 F.3d at 1040 n.5; *see Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 804-809 (9th Cir. 2009); *Ostad v. Oregon Health Science Univ.*, 327 F.3d 876, 883 (9th Cir. 2003); *Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir. 1988); *see also Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

(9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decision-maker's [ ] animus.").

Plaintiff does not dispute the application of the upstream causation rule to this unlawful retaliation claims under Title VII and FEHA. *See Opp.* 14:18-16:21. Indeed, Plaintiff asserts that while Mr. Randall, acting as Defendant's "final decision-maker," may not have exhibited any animus in agreeing to the termination, he can still prove causation by showing "that the individuals [who] provided the information upon which Randall relied had retaliatory motives." *Id.* 14:23-25; *see also PSUF* ## 579-82. In doing so, Plaintiff raises two arguments in support of his upstream causation argument, both of which involve the "inaccuracy" of Ms. Bawek's report. *See Opp.* 16:11-22.

Plaintiff first attempts to demonstrate upstream causation by suggesting that Mr. Randall relied on Ms. Bawek's report, which in turn relied on the "biased" statements of Ms. Carbone, "a person that [Defendant] knew had credibility issues . . . and who repeatedly suppressed the truth about her harassment of [Mr.] Gellar." *Id.* 16:13-16 (citing *PSUF* ## 156-71, 499-508). Plaintiff also attempts to show upstream causation because Mr. Randall accepted "numerous inaccurate facts" from Ms. Bawek's "tainted investigation," *Opp.* 16:11-12, including the finding that Plaintiff, rather than Ms. Pratt, was responsible for Mr. Gellar's hiring paperwork, *id.* 16:17-20 (citing *PSUF* ## 554-71).

Neither fact, however, evinces enough upstream causation to create a triable issue of material fact as to the third element of Plaintiff's prima facie case for unlawful retaliation. With respect to Plaintiff's first showing regarding the allegedly "biased" statements of Ms. Carbone, Plaintiff's argument fails at the threshold because he makes no attempt to link Ms. Carbone's purported bias with Mr. Randall's decision to terminate him. *See Opp.* 16:11-22. From the Court's review of the 600 some-odd facts Plaintiff filed with the Court, not a single one suggests that Ms. Carbone knew that Plaintiff, rather than Mr. Gellar or any other Archives Department employee, reported the allegations of sexual harassment to Human Resources. *See DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 879 F.2d 459, 467-68 (9th Cir. 1989) (affirming summary judgment for employer because plaintiff failed to demonstrate a nexus between an agent's discriminatory remark and plaintiff's termination); *accord Cohen*, 686 F.2d at 796.

Nor do the facts reasonably suggest that Ms. Carbone offered her ostensibly biased statements with any hope of digging Plaintiff's professional grave, rather than inoculating herself from liability in light of the allegations of sexual harassment leveled against her. *See*

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

*Lakeside-Scott*, 556 F.3d at 808 (concluding that an employee did not show enough animus for plaintiff to establish upstream causation because the employee did not recommend plaintiff's termination during the investigation or anytime thereafter); *cf. Gilbrook v. City of Westminster*, 177 F.3d 839, 850 (9th Cir. 1999). And even if Plaintiff could show that Ms. Carbone harbored discriminatory animus against him and thus intended to retaliate against him, Plaintiff comes nowhere close to showing that Mr. Randall "substantially relied" on Ms. Carbone's averments instead of the many other findings included in Ms. Bawek's report. *See Lakeside-Scott*, 556 F.3d at 808 (affirming summary judgment in favor of employer because biased supervisor's role did not rise "to the level of involvement in or influence on [the ultimate] termination decision that would allow the jury reasonably to find that [her] animus was a 'substantial' or 'motivating factor'" in plaintiff's termination); *cf. Ostad*, 327 F.3d at 880, 883 (finding upstream causation because final decision-maker "depended heavily" on employee's testimony, which "took up 217 pages of the hearing's 403-page transcript"). According to Mr. Randall, he believed that Mr. Lorentz's statements, rather than Ms. Carbone's statements, put Plaintiff on notice that Mr. Gellar and Ms. Carbone were engaged in a romantic relationship prior to Mr. Gellar's hiring. *See DSUF* # 105. At bottom, then, Plaintiff has neither shown that Ms. Carbone held any animus against him for engaging in protected opposition activity, nor has Plaintiff shown that her animus—to the extent she had any—significantly impacted Defendant's decision to terminate him. Causation thus crumbles.

The same applies to Plaintiff's final argument regarding Ms. Bawek's "tainted investigation." *See Opp.* 16:12-13 (citing *PSUF* ## 554-71, 595, 600). Even assuming, *arguendo*, that Ms. Bawek's investigation was "tainted" due to the "inaccurate facts" she relied on, *see id.*, Plaintiff still has not offered any evidence that Ms. Bawek held retaliatory animus against him or specifically intended to distort her findings because Plaintiff reported Mr. Gellar's allegations of sexual harassment to Human Resources. *Id.* Unlike every unlawful retaliation case the Court compares to this case, Ms. Bawek never criticized, reprimanded, derogated, or even insinuated that *she* disapproved of Plaintiff's decision to report Mr. Gellar's allegations of sexual harassment to Human Resources. *See generally Opp.*; *cf. Dominguez-Curry*, 424 F.3d at 1040 (finding that employee's bias could be imputed to employer's decision to deny plaintiff employment because the subordinate employee made numerous "discriminatory remarks [ ] sufficient to permit a jury to find that animus affected the ultimate hiring decision"); *Ostad*, 327 F.3d at 883 (finding that the jury had ample evidence of upstream animus given subordinate employee's express threats and accusations against plaintiff that laid the groundwork for plaintiff's termination); *Perez*, 841 F.2d at 256, 258 (holding that triable issues of fact on causation precluded employer's summary judgment motion because subordinate employee was not only involved in demotion decision, but the employee exhibited animus toward plaintiff by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

calling her "old dragon lady"); *Dominguez-Curry*, 424 F.3d at 1031, 1040 (reversing summary judgment in favor of employer because plaintiff established upward causation by showing employee made repeated discriminatory comments about her and impacted the employer's adverse employment decision).

Plaintiff also turns a blind eye to another quintessential issue: Why would Ms. Bawek or any other decision-maker fail to retaliate against Ms. Pratt, despite the fact that Ms. Pratt engaged in the exact same opposition conduct as Plaintiff when she reported Mr. Gellar's allegations of sexual harassment to Human Resources? *See PSUF* ## 377-80. Without any such explanation by Plaintiff, the Court is left guessing, and can therefore conclude only that Ms. Bawek made a few unintentional mistakes in gathering and relying on certain "inaccurate" facts, especially given Plaintiff admission that Ms. Bawek simply "messed up" those facts. *See Opp.* 6:6-10 (citing *PSUF* ## 482-83).

Finally, the Court notes in closing that to the extent Plaintiff relies on his undeveloped assertion that Defendant has a "history [ ] of cover-ups" and encourages employees "not to report sexual harassment for fear of retaliation," *see Opp.* 1:14-16, such nebulous statements as these do not show animus on behalf of Ms. Bawek or any other employee who participated in the decision to terminate Plaintiff. *Cf. Galdamez*, 415 F.3d at 1026 n.9 ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another *decision-maker*'s discriminatory animus.") (emphasis added). Nor does Plaintiff cite any authority allowing the Court to impute discriminatory bias to a specific employee based on such vague conspiracy theories. *See generally Opp.* In fact, upon the Court's review of the 679 additional material facts submitted in support of Plaintiff's opposition brief, it not only appears that a culture of silence does not exist, as other employees previously complained of sexual harassment, *see PSUF* ## 145, 148, 159, 163, 166, 168, 377-80, but it also appears that Defendant acted on these complaints by, in some cases, terminating the alleged perpetrator of the harassment, *see id.* # 172.

Without more than "inaccurate" facts, Plaintiff has not shown that anyone—not Ms. Carbone, not Ms. Bawek, and certainly not the final decision-maker Mr. Randall—harbored any intent to retaliate against him for conveying Mr. Gellar's allegations of sexual harassment to Human Resources. Plaintiff therefore falters at the third and final step of his prima facie case to establish causation between his protected opposition activity and his termination. As a result, the Court need not consider whether Defendant had a legitimate, nondiscriminatory reason for terminating Plaintiff, or even whether such a reason sounds more in pretext than in truth. Nor

E-FILED 6-6-14 [25]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

# CIVIL MINUTES - GENERAL

| Case No. | CV 13-01358 PSG (DTBx) | Date | June 6, 2014 |
|---|---|---|---|
| Title | Klein v. Walt Disney Company | | |

must the Court consider Plaintiff's additional arguments regarding post-employment retaliation and punitive damages as these claims meet the same fate as Plaintiff's unlawful retaliation claims under Title VII and FEHA. The Court thus GRANTS the motion for summary judgment.

IV.     Conclusion

    For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's unlawful retaliation claims under Title VII and FEHA.

    **IT IS SO ORDERED.**